Harper, J.
delivered the opinion of the Court.
We are very clear that the guaranty in question, was not an undertaking for the debt or default of another, within the statute of frauds. The assignors did not undertake for the debt of another, but for their own, created in consequence of the consideration, paid to them for the bond; though, to be sure, it' was only on a contingency that they were to pay it. The rule on the subject is thus stated by Roberts, in his treatise on the statute of frauds, p. 232 : “ It is to be observed in the second place, in regard to these promises founded in the liability of another person, that to constitute them such as are necessary, by virtue of the statute of frauds, to be committed to writing, the consideration should appear to have an immediate respect to the liability of the party promised for. If it spring out of any new transaction, or move to the party, promising upon some fresh and substantive ground of a personal concern to himself, the statute of frauds does not attach upon such promise, but the same may be good, if the consideration be sufficient, though existing in parol only.” In Tomlinson v. Gill, Amb. 330, in which the defendant promised that if the widow of the intestate would permit him to be joined with her in the administration, he would make good any deficiency of assets to discharge the intestate’s debts — Lord Hardwicke held this not to be within the statute. He says “the modern determinations have made a distinction between a promise to pay the original debt and on the foot of the original contract, and where it is on a new consideration.” The cases of Williams v. Leper, 3 Burr, 1886, and Castling v. Aubert, 2 East, 325, are the principal ones which have the strongest bearing on the present. In the former, the defendant, Leper, a broker, was employed to sell the effects of an insolvent, who had assigned them for the benefit of his creditors. The insolvent was in arrear for rent, and the plaintiff, the landlord, came to the house, where the goods were in the possession of the defendant, to distrain Defendant promised that if he would forbear to distrain, he himself would pay *174 the debt. Lord Mansfied said, this case had nothing to do with the statute of frauds. In Castling v. Aubert, the plaintiff, who was the general agent of one i Grayson, had accepted bills for Grayson’s accoramo- ’ dation, and had in his hands certain policies of insurance, effected for Grayson, on which losses had happened, which the insurers had agreed to pay, on which he had a lien for his indemnity, against the acceptances. Grayson having employed the defendant as his agent, the plaintiff was applied to, to deliver the policies to him for the purpose of being recovered. He refused to do so, unless the defendant would agree to provide for the payment of the bills drawn by Grayson and accpted by himself, which the defendant agreed to do. This was held not to be an undertaking for the debt of another within the statute. Lord Ellenborough says “ it is rather a purchase of the securities, which the plaintiff held in his hands.” See, also, Anstey v. Marden, 1 New. Rep. 124. I believe I have examined nearly every case upon this subject, and I have found no one in which there was a distinct beneficial consideration, moving Jo the proS miser, where the promise has been held to be within |the statute. Where such consideration is received, it is not less the party’s own debt because another is liable to pay it in the first instance. Suppose a party holding a bond and becoming doubtful of the maker’s solvency, should go to a broker and offer him a certain premium to insure — that is to guarantee the solvency of the maker, and this agreement should be made without any privity at all, with the original debtor, could this be regarded as a collateral undertaking in the language of the cases ? Or would it not be an original, substantive, independent agreement ? I have no doubt but that before our statute, when bonds were only assignable in equity, a party selling a bond might have bound himself by a parol warranty of the maker’s solvency, as well as by the warranty of soundness of ahorse or slave.
With respect to the other ground involved in the case, we think it must result from the decision of the *175 Court in the case of Stoney v. M’Neil, Harp. L. R. 156, and other decisions, that the purchaser of the bond had a right to fill up the blank over the name of the defendants, in his own name, and to strike out the name of Withers. We learn from the case of Parker v. Kennedy, 1 Bay, 399, that long before the passing of our act, it was a practice very generally prevailing to transfer bonds by simply indorsing them with the obligee’s name like negotiable paper. So firmly was this practice established, than an attempt was made in that case to make the assignor liable as the indorser of a note or bill. The attempt failed, as the Court could only regard it as a power to sue in the name of the obligee. Afterwards our act of 1798 was passed, authorizing the assignees of bonds or notes not negotiable to sue in their own names. The act prescribes nothing with respect to any mode of assignment; but it must be construed with reference to the state of things which existed at the time of its being passed. It must have had reference to the general practice of sending into the market a bond indorsed with the obli-gee’s name, intending that this should operate as a transfer, to any person who might become the purchaser. If it does have that effect, then it seems to follow that any purchaser, into whose hands it may-come, may fill up the blank in his own name, as in ease of negotiable paper. It is not held to imply a guaranty that the obligor will pay at the day, or that he will be solvent, as the indorsement of a note Qr bill does; though it does imply a guaranty that the assign- or has the right of property in the bond, as at common law, in case of the sale of other personal chattels. But I think the assignor may fix the terms of his assignment. This guaranty was written on the bond, signed by the defendants, with a blank for the name of the assignee. Thus it was sent into the market, with the intention no doubt that it should be filled up with the name of any one who should become the purchaser. It was a contract offered to any purchaser, and accepted by the plaintiff. If the indorser of a promissory note should qualify or enlarge his liability, *176 as if by a special indorsement he should dispense with the necessity of demand and notice, this I apprehend would bind him with respect to every holder into whose hands the note might come. In Blakely v. Grant, 6 Mass. Rep. 386, where the payee of a bill of exchange indorsed on it — “ should the within exchange not be accepted, and paid, agreeably to its contents, I, hereby, engage to pay the holder, in addition to the principal, 20 per cent, damages,” it was held, that a bona fide holder might insert, above such stipulation, a direction to pay the contents to his order, for value received : for the indorsement was to to be considered as general, (quoted Chitty on Bills, 153, n.) In Tyler v. Brinney, however, 7 Mass. 479, where the payee of a negotiable note, payable in six months, indorsed on it — “ I guarantee the payment of the within note, in eighteen months, if it cannot be collected of the promiser before that time,” it was held that no person could entitle himself as owner to maintain an action on the guaranty, except the original party to the guaranty, or a person claiming with the subsequent privity and assent of the payee. This decision may have turned upon the cirumstance, that the guaranty was not of payment, according to the terms of the note, but at a different time, making a different contract; nor does it appear that the guaranty was intended to be in favor of any holder into whose hands the note might come. At all events, this case comes within the exception there stated. There is evidence enough, I think, of the subsequent privity and assent of the obligees. When the plaintiff’s agent applied to them, they told him the bond was a good one and advised to purchase it. This may well be construed into an affirmance of their guaranty to the plaintiff.

The motion is granted.

Johnson & O’Neall Js. concurred.